UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE J. BERGSCHWENGER,                    Case No. 11-11752

            Plaintiff,                           Sean F. Cox
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Michael Hluchaniuk
                                               United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 20)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On April 21, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 4). This matter is before the Court on cross-motions for summary judgment. (Dkt. 18, 20).

    B.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on May 31, 2007, alleging that she became

unable to work on May 1, 2003. (Dkt. 12-5, Pg ID 171). The claim was initially

disapproved by the Commissioner on November 28, 2007. (Dkt. 12-4, Pg ID 136-

139). Plaintiff requested a hearing and on October 20, 2009, plaintiff appeared

with counsel before Administrative Law Judge (ALJ) Paul R. Armstrong, who

considered the case *de novo*. In a decision dated December 7, 2009, the ALJ

found that plaintiff was not disabled. (Dkt. 12-2, Pg ID 47-65). Plaintiff

requested a review of this decision on December 15, 2009. (Dkt. 12-2, Pg ID 45).

The ALJ's decision became the final decision of the Commissioner when, after the

review of additional exhibits[1] (Dkt. 12-2, Pg ID 42-43), the Appeals Council, on

February 17, 2011, denied plaintiff's request for review. (Dkt. 12-2, Pg ID 39-41);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that benefits be **AWARDED**.

---

    [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 43 years of age at the time of the most recent administrative hearing.  (Dkt. 12-5, Pg ID 171).  Plaintiff's relevant work history included approximately 15 years as an administrator, collections manager, quality control auditor, and a secretary.  (Dkt. 12-6, Pg ID 203).  In denying plaintiff's claims, defendant Commissioner considered neck injury, cognitive disorders, and memory loss as possible bases of disability.  (Dkt. 12-6, Pg ID 202).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of May 1, 2003 through December 31, 2008.  (Dkt. 12-2, Pg ID 52).  At step two, the ALJ found that plaintiff's degenerative disc disease in neck and back, ganglion cyst, seizure disorder, and carpal tunnel syndrome were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could  perform her previous work as an office manager, quality control auditor, secretary, collections manager, and administrative assistant.  (Dkt. 12-2, Pg ID 64-65).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs

available in the national economy.  *Id*.

    B.    <u>Plaintiff's Claims of Error</u>

Plaintiff's first claim of error is that the ALJ erroneously determined her depression to be a non-severe impairment.  And, as a result, the ALJ failed to consider any mental impairments in the RFC finding or hypothetical questions or any non-exertional complaints of fatigue.  According to plaintiff, the ALJ's reasons for rejecting her mental impairment as insignificant is unsupported.  During the hearing, the ALJ stated, "you start to doubt whether the psychiatrist is being straight with you as far as his opinion" because the mental status notes that plaintiff was oriented to time, date, and place and had good insight and judgment. (Tr. 78).  Plaintiff contends that this is not a "good reason" to reject the opinion of a treating physician.  20 C.F.R. § 404.1572(d).  Plaintiff points out that if the ALJ did not understand why plaintiff would be prescribed numerous psychiatric medications for a minor impairment, or how plaintiff could pass a mental status evaluation yet be considered to exhibit the signs and symptoms of severe depression, he should have considered contacting the treating sources for clarification or explanation.

Plaintiff also points to the extensive medical history of treatment for depression.  For example, medical treatment notes from the plaintiff's alleged onset date through the date last insured demonstrate significant depression treated

with multiple psychotropic medications.  Dr. Cowan first documented significant residual cognitive impairments in 2003.  (Tr. 490-92).  Although these cognitive deficits were expected to resolve, plaintiff's problems with memory impairment, depression, and anxiety continued.  (Tr. 475, 467-70).  Plaintiff then received counseling in 2005 at the Oakland Clinic, and had difficulty performing any activities of daily living or even getting out of bed to shower despite treatment with multiple medications including Klonopin, Zoloft, and Cymbalta.  (Tr. 451, 454-55, 458).  When plaintiff sought further psychiatric care with Dr. Ahmad in August 2008, she was noted to have constant depression despite the prescription of multiple medications including Zyprexa, Ativan, Zoloft, Prozac, and Seroquel. (Tr. 836-39).  Plaintiff also points to Dr. Sarvananda's opinion from October 2009 that plaintiff had severe and significant impairments in work-related functions. (Tr. 1026-37).  Plaintiff also finds the ALJ's focus on minute details of her psychotherapy treatment such as a note that her ex-husband was a cross-dresser, drug abuser and used to lock himself in a room as well as plaintiff's fertility problems to be "unclear" and "irrelevant," particularly since the ALJ failed to recognize that the crux of her psychiatric treatment documented ongoing depression.

Plaintiff also argues that the ALJ improperly rejected Dr. Ahmad's opinions, finding that "certain aspects" were "consistent" with the RFC but rejecting the

opinion overall as conclusory, outside of her expertise, and issued based on sympathy. Plaintiff points out that the bases for Dr. Ahmad's conclusion are noted on the form and are supported by the extensive treatment notes from plaintiff's pain management specialists. If the ALJ was concerned about Dr. Ahmad's specialization, he could have relied on the opinion of the treating pain management physician; however, he rejected Dr. Glowacki's opinion in substantial part as well. Plaintiff also contends that there is no basis for the ALJ's assumption that Dr. Ahmad's opinion was issued out of sympathy, especially given the objective medical evidence of record, including a spinal fusion, multiple pain control injections, and several nerve ablation procedures. According to plaintiff, the ALJ's assumption is contrary to law and unsupported by the facts of this case. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (rejecting the sympathetic physician rationale as the basis for discrediting the opinion of a treating physician). The ALJ also cited inconsistencies in Dr. Ahmad's opinion, but did not explain what those material inconsistencies were. As plaintiff herself suggested during the hearing, if the ALJ had questions about the difference between the two opinions, he could have recontacted Dr. Ahmad. SSR 96-5p; 20 C.F.R. § 404.1512(e).

Plaintiff objects to the ALJ's rejection of the opinion of treating physician Dr. Glowacki – "I see no support for any limitation on the claimant's sitting ability

nor any manipulative limitations…" – pointing out that Dr. Glowacki provided extensive pain control treatments through injections and nerve blocks, prescribed significant narcotic medications, and noted that plaintiff had a herniated lumbar disc as a pain generator. (Tr. 846-49, 862-67). Further, although Dr. Glowacki opined that plaintiff could perform clerical work, he also noted that her work related activities would be limited to six hours daily. (Tr. 24). Plaintiff points out the inconsistency in the ALJ's agreement with Dr. Glowacki's opinion that plaintiff could do simple clerical work, but the ALJ failed to properly consider the context of this statement. Specifically, Dr. Glowacki opined that plaintiff should be able to perform such work, but also noted that plaintiff would only be able to sit for two hours in a workday and would need to lie down to rest. (Tr. 893). Simply, the ALJ failed to note that Dr. Glowacki's opinion essentially limited Plaintiff to part-time work. And, Dr. Glowacki's opinion addressed only plaintiff's physical limitations, not whether she had the mental capacity to accurately perform simple clerical tasks. Therefore, according to plaintiff, Dr. Glowacki's opinion does not support the ALJ's ultimate determination that plaintiff could perform full-time work activity.

Plaintiff also contends that the ALJ erred by adopting the RFC opinion of Edna Feibusch while rejecting the opinion of non-examining State agency physician Dr. Edmonds. (Tr. 25). Ms. Feibusch is a lay adjudicator and plaintiff

asserts that her opinion cannot be considered. *Hall v. Astrue* 2007 U.S. Dist. LEXIS 95776, *12 n. 6 (S.D. Ala. 2007) (Reliance on disability examiner RFC is clear error requiring remand.). The ALJ dismissed Dr. Edmond's (the state agency examiner) opinion limiting plaintiff to sub-sedentary work citing "no particular support" for that limitation despite Dr. Edmond's explanation and summary of the medical and opinion evidence supporting his conclusion. (Tr. 936, 941). In contrast, the ALJ adopted the findings of Dr. Kaul (who completed the PRTF) as well supported, when, according to plaintiff, Dr. Kaul's opinion was supported by four sentence fragments referring to testing with no explanation provided. (Tr. 751). Plaintiff contends that it is entirely unclear how Dr. Kaul's opinion is well-supported but Dr. Edmond's opinion is not.

And, plaintiff asserts that the ALJ also failed to address Dr. Best's consultative examination. Although Dr. Best did not render an opinion regarding functional limitations, he did note a severely limited range of motion for both the cervical and lumbar spine, plaintiff's medical need for an assistive device for pain control and walking more than 50 feet, and her limited ability to stand. (Tr. 943-50). This information further supports the opinions of the treating sources and Dr. Edmonds' opinion, and should have been addressed in the 20 C.F.R. § 404.1527(d) determination of the weight accorded to the respective opinions. *See also* SSR 96-6p.

Plaintiff also maintains that the ALJ's credibility determination is tainted by some of the strange questions and adversarial statements made during the hearing. Plaintiff points to the ALJ's inappropriate comments on plaintiff's ex-husband's cross-dressing habits (incorrectly stating that he had a sex change operation and was a "transvestite"), along with her marital difficulties due to infertility. (Tr. 49, 57, 928). His comments extended to criticism of plaintiff's prescribed medical treatment ("Do you think that's wise [taking morphine], after that withdrawal – " (Tr. 46-47)). Notably, after plaintiff went through detoxification and withdrawal, she was discharged with similar medications including Vicodin, OxyCodone, and Morphine. (Tr. 856-57). According to plaintiff, this indicates that plaintiff's pain was severe enough that the re-prescription of such medications was deemed medically necessary by the new pain care physicians, not a basis to doubt her credibility. Therefore, plaintiff asserts that this is not an issue of whether her medication regimen was "wise" or not, but rather whether it was medically necessary and reasonably related to her medical condition. SSR 96-7p. Similar to his comments about plaintiff's prescribed medications, the ALJ also made unsupported assumptions essentially accusing plaintiff of drug use ("you used to smoke a lot of pot or what?" (Tr. 47)). However, plaintiff points out that her test results were all negative for illegal drugs. (Tr. 651, 655-61, 927). According to plaintiff, the ALJ failed to make the proper credibility assessment based on the

medical facts of the case.

The ALJ also suggested that plaintiff's physician was "over prescribing" narcotics, counseled plaintiff against "[s]omebody going in there cutting your lumbar spine for that kind of a finding… I'd be pretty hesitant", and stated that plaintiff's lumbar spine condition was "probably similar or better than most of the people in this room today…" (Tr. 59-61). Further, the ALJ then compared the plaintiff to himself, stating, "I'm 60 years old… I'm sure my lumbar spine has a lot more problems than that." (Tr. 61). The ALJ also asked the plaintiff, "Where are you going to go now? You've got to do something with yourself and, you know, what do you want?" (Tr. 54). According to plaintiff, these comments raise the question of whether the ALJ's personally held beliefs regarding proper medical treatment, or even his own medical conditions, played an impermissible role in the credibility determination.

Plaintiff argues that the ALJ improperly suggested that plaintiff find a job where she could sit or stand with a headset and voice recognition program so she would not have to sit at a computer. (Tr. 56-57). However, plaintiff contends that it is the ALJ's duty to evaluate plaintiff's allegations of disability, not inform her that she has to "do something with [her]self" or suggest workplace accommodations that cannot be considered under SSA's sequential evaluation. Plaintiff points to a decision from the United States Supreme Court holding that

"the SSA determines whether an individual is disabled for [disability] purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for [disability]." *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803 (1999) (emphasis original).  Plaintiff acknowledges that each of the comments in isolation may or may not be significant, but argues that when considered in combination and in the context of the ALJ's credibility finding categorizing plaintiff's complaints as "extreme" and "exaggerated," the ALJ demonstrated that he did not engage in a non-adversarial assessment of plaintiff's credibility based on the Commissioner's rules and regulations or in consideration of the substantial evidence of record.

Plaintiff also argues that the evidence of record does not support the ALJ's credibility finding, even if the statements are found to be harmless. The ALJ found that plaintiff's "limited daily activities cannot be objectively verified." (Tr. 26). Although there is no "objective" verification such as surveillance in a non-adversarial proceeding, there are witness statements and contemporaneous treatment notes.  These materials do document plaintiff's "extreme" limitations. *See, e.g.*, (Tr. 170-77, 202-17) (husband's corroborating statements); (Tr. 451, 454, 927) (therapist noting plaintiff unable to get out of bed to shower or perform household chores due to depression).  Even the disability examiner observed how

impaired plaintiff was due to her significant pain medications. (Tr. 157). The ALJ

then implied that plaintiff had a secondary motive ("other reasons") for her limited

activities, but does not explain what those motives could be. (Tr. 26). Plaintiff

also points out that she had a steady work history until the car accident, attempted

to return to work after her injury, and actively pursed every type of treatment

modality (injections, nerve ablation, surgery, extensive physical therapy,

medications). (Tr. 139, 175). Thus, based on the foregoing, plaintiff urges the

Court to conclude that the ALJ's negative credibility finding is not supported by

the substantial evidence of record.

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

     The Commissioner contends that substantial evidence supports the ALJ's

finding that plaintiff's depression was nonsevere during the relevant time period

of May 1, 2003 to December 31, 2008. This finding was consistent with the

finding of Dr. Kaul, the state agency reviewing psychiatrist. (Tr. 739). In this

case, the ALJ explained that he found that plaintiff had "mild" limitation of her

activities of daily living. (Tr. 15-16). As noted by the ALJ, plaintiff reported that

she was able to perform routine daily activities such as walking her dog, preparing

dinner, watching television, listening to music, going to see her father in law,

reading, and playing the flute. (Tr. 15-16, 48, 597, 736). To the extent that

plaintiff had difficulties performing activities of daily living, these difficulties

were generally the result of physical, not mental, impairments, according to the Commissioner. (Tr. 178-91). The ALJ also explained that he found that plaintiff had "mild" limitation of her social functioning because she sometimes went to a temple and often visited with friends to have dinner or play cards. (Tr. 16, 736). In addition, plaintiff's husband reported that she had no problems getting along with others. (Tr. 16, 175). The ALJ found that plaintiff had a "mild" limitation with regard to concentration, persistence, or pace based on her performance on objective psychological measures designed to test memory. (Tr. 16, 736-37). Plaintiff's husband reported that she was able to follow instructions, but needed to be reminded about some things and have things repeated. (Tr. 16, 175). Although plaintiff and her husband both reported that she had attention/concentration difficulties due to medication side effects, the Commissioner points out that the ALJ noted that plaintiff had since been weaned from the medications causing those side effects. (Tr. 16, 48, 175). Accordingly, because substantial evidence supports the ALJ's finding that plaintiff had only "mild" limitations of activities of daily living, social functioning, and concentration, persistence, or pace, and had no episodes of decompensation, his finding that plaintiff did not have a "severe" mental impairment during the relevant time period should be affirmed.

The Commissioner disagrees with plaintiff that the ALJ erred in discounting Dr. Sarvananda's October 7, 2009, opinion that plaintiff would be incapable of

working due to psychological symptoms because Dr. Sarvananda did not begin

treating plaintiff until June 17, 2009, six months after the expiration of plaintiff's

insured status. (Tr. 1032). Therefore, according to the Commissioner, Dr.

Sarvananda's opinion was of limited value in assessing plaintiff's condition during

the relevant time period. Further, the ALJ noted that Dr. Sarvananda's opinion

was internally inconsistent, conclusory, and unsupported by the other evidence of

record, entitling it to less weight under the regulations. Although plaintiff

suggests that the ALJ should have recontacted Dr. Sarvananda and

plaintiff's other treating physicians for clarification of their opinions, the

Commissioner contends that he was not required to do so because the ALJ did not

find the opinions of plaintiff's physicians to be unclear but, rather, found them to

be unsupported by the evidence. As recognized by the Sixth Circuit in the case of

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010), where a

treating physician's "opinion [is] deemed unpersuasive not because its bases [are]

unclear, but because they [are] not corroborated by objective medical evidence,"

the ALJ is not required by SSR 96-5p to recontact the treating physician.

In this case, the Commissioner maintains that the ALJ thoroughly reviewed

the medical and non-medical opinions of record and explained the reasons for the

weight that he assigned to each. (Tr. 23-26). Because the ALJ was not required to

rely on any of the physician opinions on the issue of RFC, there is no merit to

plaintiff's contention that he erred by "selective[ly] adopting" only portions of the treating physician opinions. The ALJ reasonably explained that he gave great weight to the portions of the physician opinions that were consistent with the evidence (such as Dr. Glowacki's opinion that plaintiff would be capable of doing simple, clerical work), and rejected the portions of those opinions that were unsupported by the record (such as Dr. Glowacki's opinion regarding plaintiff's sitting ability and limitations with regard to the use of her left hand).  (Tr. 23-26). As the ultimate arbiter of plaintiff's RFC, the Commissioner argues that the ALJ was entitled, indeed charged, to decide which elements of the physician opinions were fit to incorporate.

Although plaintiff takes issue with the ALJ assigning "substantial weight" to the opinion of state agency disability examiner Edna Feibusch, a nontreating, nonmedical source, the Commissioner contends that the ALJ was required to consider all of the evidence, from both medical and nonmedical sources, in deciding plaintiff's claim.  According to the Commissioner, because Ms. Feibusch's assessment of plaintiff's physical limitations was consistent with the evidence, the ALJ was entitled to rely on it.  *See Talamantes v. Astrue*, 370 Fed. Appx. 955, 958-59 (10th Cir. 2010) (finding no error in ALJ's reliance on opinion of nonmedical evaluator because the evaluator's assessment and the ALJ's ultimate finding were in accord with the medical evidence).  Accordingly, the

Commissioner says there is no merit to plaintiff's argument that Ms. Feibusch's opinion "cannot be considered" by the ALJ.

Although plaintiff claims that the ALJ "failed to address Dr. Best's consultative examination," the Commissioner contends that the ALJ explicitly discussed the results of this examination, including Dr. Best's opinion that the evidence supported the need for a walking aid and various exertional and postural limitations.  (Tr. 21-22, 728-33).  Although the ALJ did not explicitly address the weight that he assigned to Dr. Best's limitations, he implicitly addressed them, noting that he gave "great weight" to the opinions of plaintiff's examining medical professionals, and adopted them to the extent that they were consistent with the objective medical evidence.  (Tr. 23-26).

As to plaintiff's objections to the ALJ's credibility findings, the Commissioner argues that the ALJ found that plaintiff had medically determinable impairments that could reasonably be expected to produce the symptoms alleged, but her allegations of disabling pain and symptoms were not fully credible because they were inconsistent with the objective medical evidence.  As discussed by the ALJ, the objective medical evidence showed that, despite her impairments, plaintiff retained the ability to perform a limited range of sedentary work consistent with the requirements of her past relevant work.  (Tr. 12-27).  To the extent that plaintiff self-imposed restrictions on her daily activities, the ALJ noted

that, "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons." (Tr. 26). Although plaintiff takes issue with the ALJ implying that she had a "secondary motive" for limiting her activities, according to the Commissioner, this was merely the ALJ's way of stating that plaintiff's inactivity appeared to be a lifestyle choice rather than a choice dictated by plaintiff's limitations. The ALJ also noted that inconsistencies between plaintiff's testimony and the record, such as statements she made concerning the efficacy of her CPAP machine and the number of seizures she has suffered, reflected poorly on her overall credibility. (Tr. 26). According to the Commissioner, these inconsistencies also provided a basis for the ALJ to discount plaintiff's claims of disabling symptoms and limitations. Thus, because plaintiff's claims of debilitating physical and mental limitations were inconsistent with the evidence of record showing her to be less severely limited, and because her overall credibility was compromised by inaccuracies in her testimony, the Commissioner contends that substantial evidence supports the ALJ's finding that plaintiff was not fully credible, and his decision should be affirmed.

D.    Plaintiff's Reply

In response to the Commissioner's assertion that the ALJ did not have to recontact Dr. Sarvananda before deeming the plaintiff's depression not severe because the ALJ did not find Dr. Sarvananda's opinion to be unclear, but rather

unsupported, plaintiff points out that the ALJ stated that he "doubt[ed] whether the psychiatrist is being straight with you as far as his opinion" because the mental status notes that plaintiff was oriented to time, date, and place and had good insight and judgment.  (Tr. 78).  According to plaintiff, this indicates that the ALJ was confused about the difference between symptoms of depression as compared to severe dementia or disorientation such that a person does not know where they are or the day and time.  Plaintiff is also not impressed with the Commissioner's new assertion that Dr. Sarvananda's opinion is not significant because it was rendered after the date last insured.  Plaintiff points out that she received treatment with Dr. Sarvananda's colleagues at the same facility, New Oakland Center, prior to her date last insured.  And, her signs and symptoms of severe depression were documented by these other physicians, and were part of the clinical history available to Dr. Sarvananda.  *See, e.g.,* (Tr. 451-64, 925-33).  And, plaintiff asserts that if the ALJ was concerned about the rationale for Dr. Sarvananda's opinion, he should have recontacted the physician.

Plaintiff also takes issue with the Commissioner's and ALJ's analysis of the evidence, which focuses on daily activities and plaintiff's personal problems with her prior husband, as opposed to medical evidence.  According to plaintiff, the medical evidence demonstrates that plaintiff's depression was symptomatic despite extensive treatment with various medications.  (Tr. 451, 454-55, 458,

467-70, 475, 836-39).  This evidence demonstrates that plaintiff's depression was more than a "slight impairment" with a "minimal effect."

Plaintiff also objects to the Commissioner's assertion that the ALJ properly adopted and accorded "substantial weight" to the opinion of layperson Edna Feibusch, while rejecting the opinion of non-examining State agency physician Dr. Edmonds.  Plaintiff points out that the Commissioner does not address the holding in *Hall v. Astrue*, but instead cites *Talamantes v. Astrue*, 370 Fed.Appx. 955, 958-59 (10th Cir. 2010), in which there was no medical opinion that contradicted the ALJ's finding.  In this case, the ALJ rejected the opinions of the treating physicians Dr. Ahmad and Dr. Glowacki, and also rejected the opinion of the State Agency physician, Dr. Edmond.  (Tr. 23-24, 846-49, 862-67, 893, 936, 941).  But, unlike *Talamantes*, there were multiple medical opinions contradicting the layperson's opinion.  Furthermore, plaintiff also points out that while this case was still pending before the Commissioner at the Appeals Council, the Commissioner issued a Memorandum and Reminder that an ALJ cannot accord evidentiary weight to lay adjudicator or "single decision maker" opinions.  *See* Exhibit A (original version and revised version), *see also Grissett v. Astrue*, 2011 WL 4439543, at *5 (W.D. Wash. 2011) (adopting Report and Recommendation), 2011 WL 4478459 (W.D. Wash. 2011) (Noting that ALJs were instructed to refrain from evaluating or relying on SDM determinations as substantive evidence.).

Thus, according to plaintiff, the Commissioner's position in this case is contrary to the Commissioner's own policy.

Finally, plaintiff contends that there is no provision in 20 C.F.R. § 404.1527 that would permit an ALJ to accord more evidentiary weight to "medical" opinion of a lay person over that of any type of physician.  While the Commissioner asserts that the ALJ properly considered all opinions, and properly chose portions of those opinions, plaintiff contends that the ALJ accorded the most weight to the non-medical DDS employee, and made it clear that he was rejecting the opinions of the treating and DDS physicians.  The ALJ further erred in failing to properly assess the medical opinions and evaluations in accordance with 20 C.F.R. § 404.1527(d) and by rejecting the opinions of the treating physicians and State agency physician, and relying on the opinion of a DDS employee.

According to plaintiff, the Commissioner fails to respond to her argument that the ALJ's credibility determination is tainted by the strange questions, commentary to what medical care she received or should seek, adversarial statements, and comments about jobs that could be performed with accommodation for disabilities made during the hearing.  (Tr. 46-47, 49, 56-57, 59-61, 651, 655-61, 927-28).  Plaintiff argues that when the ALJ's comments are considered as a whole and in the context of the ALJ's credibility finding categorizing plaintiff's complaints as "extreme" and "exaggerated," the ALJ's

credibility finding is significantly flawed.

Instead of addressing this issue, plaintiff points out that the Commissioner argued instead that the ALJ's credibility determination was sufficiently justified by his statement that plaintiff had a "secondary motive", and due to "inconsistencies" in statements regarding the efficacy of the CPAP machine and the number of seizures.  The Commissioner characterizes the "secondary motive" comment as "merely the ALJ's way of stating that Plaintiff's inactivity appeared to be a lifestyle choice."  According to plaintiff, the term "secondary motive" in common understanding means that plaintiff would have had another reason other than her actual disability for filing an application, not simply that she was making a "lifestyle choice."  Plaintiff points out that she had a steady work history until the car accident, attempted to return to work after her injury, and actively pursed every type of treatment modality (injections, nerve ablation, surgery, extensive physical therapy, medications).  (Tr. 139, 175).  Plaintiff contends that there is nothing in the record to support the Commissioner's new theory that plaintiff suddenly decided to change her "lifestyle" and seek disability.  In addition, the record supports plaintiff's allegations of continuing difficulty with the CPAP treatment.  Plaintiff experienced difficulty getting the mask to fit correctly due to her thick hair, and the treatment was not maximized with the ill fitting mask.  (Tr. 868, 870, 881, 886).  Finally, plaintiff asserts that minor inconsistencies regarding

the reported seizures or episodes, which were not claimed as the basis of disability, nor are such minor inconsistencies regarding CPAP treatment substantial evidence in support of a negative credibility finding.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

  If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

While plaintiff cites a number of errors, many of which have merit, the fundamental problem with the ALJ's analysis is that he seems to have formulated his RFC and then simply dismissed plaintiff's statements and any evidence that did not fit his pre-determined RFC. *Pena v. Astrue*, 2012 WL 683760,*8 (N.D. Ill. 2012). The practice of "[f]inding statements that support the RFC credible and disregarding those that do not 'turns the credibility determination process on its head.'" *See Collins v. Astrue*, 2011 WL 6318720, at *10 (N.D. Ill. 2011), quoting *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003); *see also Hatchett v. Astrue*, 2011 WL 3876920 (N.D. Ill. 2011). For example, the ALJ indicated that "certain aspects" of Dr. Ahmad's opinions were consistent with the RFC, but because of some inconsistences,[2] he rejected her opinions to the extent they conflicted with the RFC. (Dkt. 12-2, Pg ID 62). It is not clear which "aspects" of Dr. Ahmad's opinions were in fact "consistent" with the RFC because

---

    [2] As discussed at the hearing, Dr. Ahmad's statement of work activities that plaintiff could perform is confusing and inconsistent. For example, it indicates that plaintiff could occasionally lift up to 10 pounds and frequently lift up to 20 pounds, and occasionally carry up to 20 pounds. It further indicated that plaintiff could frequently carry up to 50 pounds. It is readily apparent that Dr. Ahmad did not understand the form or made several errors in completing the form. It seems highly unlikely that anyone in plaintiff's condition, after having four disks fused and failed back syndrome, would be permitted, under any reasonable circumstances to carry up to 50 pounds frequently during the work day. This would, perhaps, have been something the ALJ could have clarified by recontacting Dr. Ahmad at the hearing.

the ALJ did not offer any explanation of this statement.  The ALJ then opined that Dr. Ahmad's opinions were likely based on sympathy, rather than any professional opinion, however, he cites to no record evidence in support of this strange assumption.  While the ALJ found that the remainder of Dr. Ahmad's opinions to likely have been issued out of sympathy, because they were so inconsistent with the medical evidence of record, the ALJ does not actually cite any particular evidence that was so inconsistent with Dr. Ahmad's opinions.  Moreover, it is well-established that a 'finding that a treating source medical opinion ... is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r*, 581 F.3d 399 (6th Cir. 2009), quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Id*.  The ALJ did not do so here.

Even more oddly, the ALJ adopted Dr. Glowacki's opinions only to the extent they were consistent with his RFC and rejected the remainder as unsupported:

> For the most part, the restrictions indicated by ... Dr. Glowacki are consistent with those determined in this decision.  Therefore substantial weight is given to Dr. Glowacki's opinion to the extent it agrees with the functional capacity set out above.  However, I see no

> support for any limitation on the claimant's sitting ability
> nor any manipulative limitations on the claimant's left
> hand. I agree with his conclusion that the claimant could
> do simple clerical work.

(Dkt. 12-2, Pg ID 62). While the ALJ saw "no support" for any limitation on

plaintiff's sitting ability, he also cited no medical evidence that contradicted Dr.

Glowacki's opinions. And, he offered no basis whatsoever for rejecting Dr.

Glowacki's opinion that, while plaintiff could perform simple clerical work, in an

8 hour workday, she could only sit for up to two hours, stand for up to one hour,

walk for up to one hour, and would need to lie down for the remainder of the 8

hour work day. (Dkt. 12-13, Pg ID 942). These limitations would obviously

preclude even sedentary work. Dr. Glowacki treated plaintiff extensively

beginning in September 2008 and his opinions are supported by regular pain office

visits, treatments, extensive examinations and monitoring of plaintiff's conditions.

Prior to treating with Dr. Glowacki, plaintiff saw another pain specialist for

several years and was also extensively treating with pain injections and

rhizotomies.[3] Dr. Glowacki was well-familiar with her extensive history of

treatment.

The ALJ treated the consultative opinions in the same manner. They were

---

[3] This procedure involves destroying the nerves that innervate the facet joints with highly localized heat generated with radiofrequency. By destroying these nerves, the communication link that signals pain from the spine to the brain can be broken. *See* http://www.cdirad.com/ (The Center for Diagnostic Imaging).

adopted only to the extent they agreed with his RFC and rejected to the extent they did not.  For example, Dr. Kaul's 2007 opinions regarding plaintiff's mental limitations was adopted, despite the extensive mental health treatment that plaintiff received in the two years following that report.  However, Dr. Edmonds' 2009 PRFC was largely rejected even though he concluded that the medical source statement could be adopted, that plaintiff could stand no more than 1 hour in an 8 hour day and sit for no more than 4 hours, requiring a sit/stand option every 30-45 minutes.  Dr. Edmonds specifically concluded that there was longitudinal medical evidence of record to show these limitations as well as a medically determinable impairment.  (Dkt. 12-13, Pg ID 987).  Dr. Edmunds also found plaintiff's complaints to be credible because they were supported by both the medical evidence of record and the medical source statement.  (Dkt. 12-13, Pg ID 990).  The ALJ also did little to explain how he accommodated the limitations found by the consulting examiner, Dr. Best.  While Dr. Best did not render an opinion regarding functional limitations, he did find that plaintiff had a severely limited range of motion for both the cervical and lumbar spine, supported plaintiff's medical need for an assistive device for pain control and walking more than 50 feet, and her limited ability to stand.  (Tr. 943-50).

Yet, contrary to the treating and consulting expert medical opinions, the ALJ adopted the opinions of a non-medical disability examiner, Edna Feibusch,

whose opinion was formulated nearly two years before the hearing and without the benefit of a treating or examining source statement. (Dkt. 12-10, Pg ID 805). Ms. Feibusch was acting pursuant to 20 C.F.R. §§ 404.906(b)(2), which provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. *Id*. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA–4734–BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05.

Here, the form was clear that Ms. Feibusch was not a physician and significantly, no physician signed off on her physical functional capacity assessment. (Dkt. 12-10, Pg ID 806). According to the Disability Determination

and Transmittal, Dr. Kaul approved the PRTF completed in 2007, but there is nothing to indicate that a medical professional signed off on the physical functional capacity assessment performed by Ms. Feibusch. (Dkt. 12-3, Pg ID 132). This error is hardly harmless given that no medical professional, treating or otherwise, adopted Ms. Feibusch's opinion. *See e.g.*, *Hensley v. Comm'r*, 2011 WL 4406359 (E.D. Mich. 2011). Thus, plaintiff is correct that the ALJ was not entitled to rely on Ms. Feibusch's opinions.

In the view of the undersigned, the ALJ's decision is plainly not supported by substantial evidence. Again, plaintiff cites a host of errors, many of which are meritorious. However, given the definitive opinions of Dr. Glowacki and Dr. Edmunds, which mandate a finding of disability, every specific error pointed out by plaintiff need not be addressed. And, this record supports a clear entitlement to benefits and no remand for further proceedings is necessary. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) ("If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985) (A court may directly award benefits, rather than remanding for proper consideration by the ALJ, where the record is complete and the Commissioner's

decision is clearly erroneous, proof of disability is strong and evidence to the contrary is lacking, or the claimant has presented overwhelming evidence of disability.).

This case tracks *Mowery*.  Even without addressing plaintiff's mental impairments, the opinions of her treating physician, Dr. Glowacki and the consulting expert physician, Dr. Edmonds, dictate that plaintiff is physically unable to work full-time even at a restricted sedentary job and the record evidence is overwhelming in this regard.  A treating physician's opinion should be given greater weight than the opinions of consultative physicians who are hired for the purpose of litigation and who examine the claimant only once.  *See Jones v. Sec.'y of Health & Human Servs.*, 945 F.2d 1365, 1370 & n. 7 (6th Cir.1991); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir.1985).  If a treating physician's opinion is not contradicted, complete deference must be given to it. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).  In this case, the ALJ identified no medical evidence of record or expert opinion evidence that contradicted Dr. Glowacki's opinion.  Moreover, the consulting expert, Dr. Edmunds, essentially agreed with Dr. Glowacki's opinions and under the specific restrictions he identified, plaintiff would plainly not be able to work full time.  The opinions of non-examining state agency medical consultants can, under some

circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at

(S.D. Ohio 2009).  This is so because nonexamining sources are viewed "as highly

qualified physicians and psychologists who are experts in the evaluation of the

medical issues in disability claims under the [Social Security] Act."  SSR 96-6p,

1996 WL 374180.  Here, the ALJ inappropriately rejected not only the treating

physician's uncontradicted opinion, but the opinion of the state agency medical

expert who agreed with the opinion and that it was fully supported by the medical

evidence of record.  And, such an opinion was only supported by the consulting

examiner, despite the fact that he did not opine on plaintiff's specific functional

limitations.  The only evidence to the contrary is the opinion of Ms. Feibusch,

which carries no weight whatsoever.[4]  Under these circumstances, there is no need

to remand for further proceedings and benefits should be awarded.

Because the record is so clear that plaintiff is physically unable to work full

time, the claims of error regarding her mental impairments need not be addressed.

In the event that the Court determines that a remand is necessary, the undersigned

suggests, however, that this matter be remanded to a different ALJ and further

consideration be given to the assessment of her mental impairments.  A review of

---

[4] Given the definitive nature of the remaining opinion and treating evidence, Dr. Ahmad's confusing opinions regarding plaintiff's functional limitations need not even be considered to reach this result, although the undersigned would not, in any event, consider them to be "contrary" to the evidence cited above.

the hearing transcript in this case reveals an apparent bias against and hostility
toward plaintiff.  The ALJ is supposed to be an independent fact finder and has a
duty to fully and fairly develop the record.  *Johnson v. Secretary of HHS*, 794 F.2d
1106, 1111 (6th Cir. 1986).  The presumption that the judicial officer is unbiased
can be rebutted by showing that he "displayed deep-seated and unequivocal
antagonism that would render fair judgment impossible;" however even
"expressions of impatience, dissatisfaction, annoyance, and even anger, that are
within the bounds of what imperfect men and women ... sometimes display" do not
establish bias.  *Liteky v. United States*, 510 U.S. 540, 555-556 (1994).  Remand for
a full and fair hearing before a different ALJ can be ordered by the court.
*Schenburn v. Chater*, 1996 WL 426534 (E.D. Mich. 1996), citing *Ventura v.
Shalala*, 55 F.3d 900, 903-05 (3d Cir. 1995) (ALJ's impatience, interrogations,
and hostility to a claimant's representative undermined a full and fair hearing).
Such circumstances can include where there were several exchanges initiated by
the ALJ regarding troubles with the law, the plaintiff's favorite television
programs, music, movies and books, along with several specific instances of
personal bias and animosity.  *See Mauro v. Comm'r of Soc. Sec.*, 2008 WL
4955362, *6 (E.D. Mich. 2008) (The plaintiff demonstrated that the ALJ was not
neutral and his comments cast doubt on the integrity of the determination); *see
also Bieschke v. Comm'r of Soc. Sec.*, 2009 WL 735077 (W.D. Mich. 2009) (The

plaintiff failed to identify any inappropriate comments by the ALJ which might serve as evidence of personal bias or animus against his client, or against disability claimants generally), contrasting *Lewis v. Astrue*, 2008 WL 4330458, *5-6 (E.D. Cal. 2008) (remanding for a new hearing before a different ALJ) ("[T]he ALJ preempted the hearing and accused plaintiff of lying, doctor shopping and having an attitude problem. * * * More troubling, however, is the ALJ's lengthy colloquy about his colleagues and other claimants who continue to work despite injuries or medical conditions.  These reference[s] to extra-record factual information appear to have actually influenced the outcome of his decision.  His comments suggest ... a preconceived opinion regarding plaintiff's alleged disability that appears to have been improperly informed by 'extrajudicial' sources.").

The undersigned finds the ALJ's questioning at the hearing to be far more egregious than that in *Mauro* and quite similar to that in *Lewis*.  In fact, plaintiff did not even cite all of the egregious statements by the ALJ.  In addition to those described above, this exchange is quite troubling:

> Q Okay. Well, what about reading? You love reading. Right? [INAUDIBLE] .
>
> A Yes, I -- I do. I read -- when I'm relaxing, I'm reading self-help books.
>
> Q Okay. Like, what have you read?
>
> A I've read, well, Wayne -- Dr. Wayne Dyer. I don't

know if you've ever heard of him.

Q He's a –

A I read a series of his books, and CDS. And I'm currently reading a book about following your intuition, and I can't –

Q Dr. Wayne Dyer's -- a big course in miracles there. Do you know anything about the course in miracles?
A I haven't read that. I'm reading, right now, Being in Balance.

Q I mean, it's something -- again, I don't want to offend you. I know you're a -- you know, because it's somewhat -- but it was supposedly dictated to a lady -- atheistic Jewish lady -- academic, called Helen Schucman -- and she wrote it down, to help with somebody else.

And it's just something that -- you know, Dr. Dyer is somebody who was -- of course, he's written a lot of books, but, I mean -- getting in touch with yourself and everything else, and it's -- it's definitely some that'll help. It can't hurt you [INAUDIBLE], obviously.

(Dkt. 12-2, Pg ID 93-94).  Asking plaintiff what she likes to read may not be, in

and of itself, problematic, however, referring to plaintiff, who is apparently

Jewish, as a "you know" and discussing a random book purportedly written by an

"atheistic Jewish lady" hardly seems within the realm of appropriate questioning

during an administrative hearing regarding a social security disability claim.  In

light of the numerous instances described above, along with this passage, it is

entirely clear that the ALJ's credibility analysis was tainted and biased.  For this

reason, if the Court determines that remand is appropriate, this matter should be assigned to another ALJ.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that benefits be **AWARDED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 20, 2012                      s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 20, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Randall E. Phillips, Stuart S. Johnson, Frederick J. Daley, Jr., Andrew J. Lievense, AUSA, and the Commissioner of Social Security.

                                           s/Darlene Chubb
                                           Judicial Assistant
                                           (810) 341-7850
                                           darlene_chubb@mied.uscourts.gov